# CONSTITUTIONAL LAW

**JUVENILE CAUSES – CUSTODIAL INTERROGATION – RIGHT TO COUNSEL – WHETHER THE CHILD INTERROGATION PROTECTION ACT VIOLATES ANY CONSTITUTIONAL RIGHT OF A CHILD TO SUBMIT TO CUSTODIAL INTERROGATION WITHOUT THE ASSISTANCE OF COUNSEL OR OF A PARENT TO CONTROL THEIR CHILD'S DECISIONS DURING INTERROGATION**

January 11, 2024

*The Honorable Elizabeth Embry*
*Maryland House of Delegates*

In 2022, the General Assembly enacted the Child Interrogation Protection Act (the "Act"), which, among other things, provides that "[a] law enforcement officer may not conduct a custodial interrogation of a child until . . . [t]he child has consulted with an attorney." Md. Code Ann., Courts & Jud. Proc. ("CJP") § 3-8A-14.2. In the summer of 2023, soon after the law took effect, some prosecutors began making public statements suggesting that the Act might be unconstitutional. They have raised two arguments. First, they have suggested that the Act's requirement that a child consult with an attorney might be unlawful because, the argument goes, a suspect not only has a constitutional right to the assistance of counsel at custodial interrogation but the right to proceed without the aid of an attorney. The statute is thus unconstitutional, the argument continues, because it denies children the right to submit to custodial interrogation without the assistance of counsel. Second, these prosecutors have suggested that the Act might unconstitutionally infringe upon parental rights by not permitting parents to decide whether their child should consult with an attorney, speak to police, or both. In light of these public statements, you have asked for our opinion about the constitutionality of the Act.

As we explain below, we see no basis to conclude that the Act's attorney-consultation requirement violates the constitutional rights of children or their parents. With respect to children subject to the Act, we are not aware of any "right" to be subjected to custodial interrogation without the assistance of counsel. Although the United States Supreme Court has recognized a limited right to self-representation at criminal *trials*, the Court has never suggested that such a right applies to *custodial interrogations*. Regardless, even if such right to self-representation existed, the Act does not actually prevent a child from answering police officers' questions

3

without the presence or assistance of an attorney. As for parents, the Supreme Court has recognized a constitutional right to make certain decisions about a child's education and upbringing. But the Court has never held that parents have a right to decide whether their children should invoke or waive constitutional protections during custodial interrogation. Although the Court has not addressed that specific question, it has, in cases involving the custodial interrogation of a child, focused on the individual liberty interests of the child, implying that these rights are paramount and, thus, prevail over a parent's interest in the care, custody, and control of their child.

# I
# Background

## A.    *Custodial Interrogations in Maryland Before October 2022*

Before the Child Interrogation Protection Act took effect on October 1, 2022, custodial interrogations of children in Maryland were generally subject to the same standards that apply to the questioning of adults in police custody.[1] No matter a person's age, when a police officer takes someone into custody, the officer may not interrogate them without first providing "*Miranda* warnings." *See, e.g.*, *Rush v. State*, 403 Md. 68, 83 (2008) (involving *Miranda* warnings to an adult); *In re Shannon A.*, 60 Md. App. 399, 402, 405 (1984) (involving *Miranda* warnings to a child). These warnings come from the United States Supreme Court's landmark decision in *Miranda v. Arizona*, 384 U.S. 436 (1966). There the Court held that, to protect a suspect's privilege against self-incrimination under the Fifth Amendment to the United States Constitution,[2] police cannot subject someone to custodial interrogation without first warning the person that they have the right to remain silent, that anything the person says can be used against them in court, that

---

[1] "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [their] freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[2] The Fifth Amendment says that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself," U.S. Const., Amend. V, and applies to the States through the Fourteenth Amendment, *e.g.*, *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). Article 22 of the Maryland Declaration of Rights similarly provides "[t]hat no man ought to be compelled to give evidence against himself in a criminal case." Md. Decl. Rights Art. 22. The Supreme Court of Maryland has generally construed the Maryland and federal provisions consistently. *E.g.*, *Hoey v. State*, 311 Md. 473, 480 n.2 (1988).

the person has the right to the presence of an attorney, and that, if the person cannot afford an attorney, one will be appointed before any questioning, if the person so desires. *Miranda*, 384 U.S. at 478-79. Only if the suspect knowingly, intelligently, and voluntarily waives those rights may the State use the suspect's statement in a subsequent criminal prosecution, *id.* at 479, or juvenile delinquency proceeding, *In re Gault*, 387 U.S. 1, 55 (1967).

A suspect's age is not wholly irrelevant. Whether a person is "in custody" and, thus, entitled to *Miranda* rights depends on whether, under the totality of circumstances, a reasonable person in the suspect's position would not have felt free to terminate the interrogation and leave. *E.g.*, *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). And although "a child's age" may not "be a determinative, or even a significant, factor in every case," the United States Supreme Court has said that age is a relevant consideration in the custody analysis. *J.D.B. v. North Carolina*, 564 U.S. 261, 277 (2011). A suspect's age—and whether a child in custody has requested and had access to a parent—may also be relevant to determining whether the suspect has knowingly, intelligently, and voluntarily waived their *Miranda* rights. *See, e.g.*, *Fare v. Michael C.*, 442 U.S. 707, 724-25 (1979) (explaining that waiver is based on the totality of the circumstances, such as the suspect's "age, experience, education, background, . . . intelligence, and . . . whether [the suspect] has the capacity to understand the warnings given . . ., the nature of . . . Fifth Amendment rights, and the consequences of waiving those rights"); *McIntyre v. State*, 309 Md. 607, 621 (1987) (recognizing that whether a child suspect asked for and was granted access to a parent may be relevant in determining whether the child knowingly, intelligently, and voluntarily waived their *Miranda* rights).

Beyond these limited circumstances, however, the law has generally applied the same standards to the custodial interrogations of both children and adults. *See, e.g.*, Barry C. Feld, *Behind Closed Doors: What Really Happens When Cops Question Kids*, 23 Cornell J.L. & Pub. Pol'y 395, 399 (2013) (recognizing that, "[a]lthough the [United States Supreme] Court has repeatedly cautioned that youthfulness adversely affects juveniles' ability to exercise *Miranda* or make voluntary statements, it has not required special procedures to protect young suspects"); Donald E. McInnis et al., *The Evolution of Juvenile Justice from the Book of Leviticus to Parens Patriae: The Next Step After* In re Gault, 53 Loy. L.A. L. Rev. 553, 555 (2020) ("Although the Court has cautioned trial

judges in regard to the immaturity of minors and minors' inability to invoke or waive their *Miranda* rights, the Court has not mandated any special procedural protections for juveniles.").[3]

## B. Enactment of the Child Interrogation Protection Act

In 2022, the General Assembly considered legislation to provide "a little bit extra" protection for children subject to custodial interrogation. *Voting Session on S.B. 53 Before the House Judiciary Comm.*, 2022 Leg., Reg. Sess., at 18:54-18:59 (Mar. 28, 2022, Session No. 1) (statement of Del. Bartlett). These bills were based on concerns that children often fail to understand *Miranda* warnings,[4] waive their *Miranda* rights at an alarmingly

---

[3] Conforming to the mandates of *Miranda* and its progeny is not the government's only obligation when obtaining confessions. To comply with Maryland common law, police must abstain from using "force, undue influence, improper promises, or threats." *Hoey*, 311 Md. at 483. Similarly, to protect a suspect's due process rights under the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights, police must avoid "overreaching," "coercion," *id.* at 486, and the use of "interrogation techniques" that "are so offensive to a civilized system of justice that they must be condemned," *id.* at 485 (quoting *Colorado v. Connelly*, 479 US. 157, 163 (1986)); *see also* U.S. Const., Amend. XIV, § 1 (providing that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law"); Md. Decl. Rights Art. 24 (providing "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land"); *Reynolds v. State*, 461 Md. 159, 176 (2018) (recognizing that Article 24 is "a corollary to the federal Due Process Clause"). As we shall explain, however, the intent of the Child Interrogation Protection Act was to provide children more robust protections of their privilege against self-incrimination under the Fifth Amendment. Thus, we have focused on *Miranda* rights and the waiver of those rights.

[4] *See* House Floor Proceedings No. 43, 2022 Leg., Reg. Sess., at 28:08-28:12 (March 30, 2022) (statement of Del. Bartlett that "data show[] that children do not understand *Miranda* warnings"); Senate Floor Proceedings No. 44A, 2022 Leg., Reg. Sess., at 1:10:07-1:10:17 (Mar. 16, 2022) (statement of Sen. Carter that children often cannot understand *Miranda* warnings); *see also Hearing on S.B. 53 Before the Senate Judicial Proceedings Comm.* (Jan. 27, 2022) (written testimony of Jeff Kukucka, Towson University Associate Professor of Psychology, citing a study that found that 31 percent of juvenile defendants "showed inadequate understanding of their *Miranda* rights"); *id.* (written

high rate,[5] and frequently make false confessions.[6]  The sponsors thus sought to impose two conditions before police could subject a child to custodial interrogation:  First, police would have to make a reasonable attempt to contact the child's parent, guardian, or custodian,[7] and, second, the police could not interrogate the child until after the child consulted with an attorney. S.B. 53, 2022 Leg., Reg. Sess. (First Reader); H.B. 269, 2022 Leg., Reg. Sess. (First Reader).  "All this bill does," said lead Senate sponsor Jill Carter, "is make sure that the young person understands what they are doing and what their rights are." *Voting Session on S.B. 53 Before the Senate Judicial Proceedings Comm.*, 2022 Leg., Reg. Sess., at

---

testimony of Northwestern University Professors Laura Nirider and Steven Drizin, citing "a recent study of twelve- to nineteen-year-olds [that] showed that 69% didn't fully comprehend their *Miranda* rights").

[5] *See Hearing on S.B. 53 Before the Senate Judicial Proceedings Comm.* (Jan. 27, 2022) (written testimony of Maryland State Bar Association Family & Juvenile Law Section that 90 percent of youth waive their *Miranda* rights); Senate Floor Proceedings No. 44A, 2022 Leg., Reg. Sess., at 1:10:19-1:10:28 (Mar. 16, 2022) (statement of Sen. Carter that 91 percent of children waive *Miranda* rights).

[6] *See Voting Session on S.B. 53 Before the House Judiciary Comm.*, 2022 Leg., Reg. Sess., at 19:23-19:36 (Mar. 28, 2022, Session No. 1) (statement of Del. Bartlett) ("It's important for a child to understand what they are facing.  Because the problem is that there have been so many false confessions."); *see also Hearing on S.B. 53 Before the Senate Judicial Proceedings Comm.*, 2022 Leg., Reg. Sess. (Jan. 27, 2022) (written testimony of National Juvenile Justice Network referring to a study of youth who self-reported confessing that found that 35 percent reported falsely confessing).

[7] The Juvenile Causes Act has long required that, when police take a child into custody, the police "immediately notify, or cause to be notified, the child's parents, guardian, or custodian of the action."  CJP § 3-8A-14(b) (2020 Repl. Vol.).  But this statutory requirement does not apply when a child is taken into custody on serious criminal charges that are beyond the scope of the juvenile court. *See Jones v. State*, 311 Md. 398, 406-07 (1988) (holding that the parental notification requirement, then found at CJP § 3-814(b), did not apply to a seventeen-year-old arrested and charged with first degree murder and, thus, noncompliance with the statute "had no direct bearing on the validity of [his] *Miranda* waiver").  Similarly, § 2-108 of the Criminal Procedure Article has long required police to attempt to notify a minor's parent or guardian when the child is taken into custody in a criminal matter.  Md. Code Ann., Crim. Proc. § 2-108(b).  But the statute does not condition custodial interrogation on that notification. *Id.*  Indeed, before passage of the Child Interrogation Protection Act, the statute gave police 48 hours in which to attempt to notify a minor's parent or guardian that the minor was in custody.  2022 Md. Laws, ch. 50.

1:06:22-1:06:31 (Mar. 11, 2022) (statement of Sen. Carter).  After consulting with the attorney, "the child would then still be subject to interrogation," with the option to waive their *Miranda* rights and speak to police.     *Id.* at 1:00:13-1:00:20, 1:06:32-1:06:52 (statements of Sen. Carter).  But the *Miranda* rights could not "be waived without the individual talking to an attorney first."  *Voting Session on S.B. 53 Before the House Judiciary Committee*, 2022 Leg., Reg. Sess., at 20:01-20:06 (Mar. 28, 2022, Session No. 1) (statement of Del. Bartlett).

Both chambers of the General Assembly passed the legislation, but Governor Lawrence J. Hogan, Jr. vetoed it, echoing criticism that several law enforcement officials and prosecutors had raised.    While praising the legislation's "good intentions," Governor Hogan said that the requirement that a child consult with an attorney would "effectively eliminate the ability for law enforcement to interrogate a youth," thereby "hamper[ing] criminal investigations."  Letter from Gov. Lawrence J. Hogan, Jr. to Senate President Bill Ferguson Regarding Veto of S.B. 53, at 1 (Apr. 8, 2022); *see also Hearing on S.B. 53 Before the Senate Judicial Proceedings Comm.*, 2022 Leg., Reg. Sess. (Jan. 27, 2022) (written testimony of Allan J. Culver, State's Attorney for Carroll County, that the legislation would impose "unnecessary logistical hurdles" that "would effectively eliminate" police officers' "ability to question a juvenile in custody for even the most violent crimes"); *Hearing on S.B. 53 Before the House Judiciary Comm.*, 2022 Leg., Reg. Sess. (Mar. 23, 2022) (written testimony of Laura Corbett Wilt, Chief Assistant State's Attorney for Frederick County, arguing that the requirement that a child consult with an attorney before custodial interrogation would "shut down every single investigation involving youth" because defense attorneys "do not allow clients to speak").  *But see Hearing on S.B. 53 Before the Senate Judicial Proceedings Comm.*, 2022 Leg., Reg. Sess. (Jan. 27, 2022) (written testimony of Baltimore City State's Attorney Marilyn Mosby, hailing this "important piece of legislation that can protect our children while at the same time promoting public safety").  The General Assembly overrode the veto, and the Child Interrogation Protection Act took effect on October 1, 2022.  2022 Md. Laws, ch. 50, § 3.

As enacted, the statute provides that "[a] law enforcement officer may not conduct a custodial interrogation of a child until"

"[t]he child has consulted with an attorney"[8] and "[t]he law enforcement officer has made an effort reasonably calculated to give actual notice to the parent, guardian, or custodian of the child that the child will be interrogated." CJP § 3-8A-14.2(b). The requirement of consultation with an attorney may not be waived and applies regardless of whether the child is proceeded against as a child or charged as an adult. *Id.* (e).

The consultation with an attorney shall be confidential and "[c]onducted in a manner consistent with the Maryland Rules of Professional Conduct," *id.* (c)(1), which, among other things, require an attorney to "abide by a client's decisions concerning the objectives of the representation and, when appropriate," to "consult with the client as to the means by which they are to be pursued," Md. Rule 19-301.2(a). Consultations may be in person or by telephone or video conference. CJP § 3-8A-14.2(c)(2). "To the extent practicable and consistent with the Maryland Rules of Professional Conduct, an attorney providing consultation . . . shall communicate and coordinate with the parent, guardian, or custodian of the child in custody." *Id.* (d).

As for a police officer's obligations, the Act's limitations on custodial interrogation do not apply when the officer "reasonably believes that the information sought is necessary to protect against a threat to public safety." *Id*. (g)(1). Under those circumstances, the officer "may conduct an otherwise lawful custodial interrogation," without first notifying the child's parent, guardian, or custodian, and without first allowing the child to consult with an attorney, provided that "[t]he questions posed to the child by the law enforcement officer are limited to those questions reasonably necessary to obtain the information necessary to protect against the threat to public safety." *Id.* If an officer willfully fails to comply with the statute, "[t]here is a rebuttable presumption that a statement made by [the] child during a custodial interrogation is inadmissible in a delinquency proceeding or a criminal prosecution against that child," but the State may overcome that presumption by showing, "by clear and convincing evidence, that the statement was made knowingly, intelligently, and voluntarily." *Id.* (h).[9]

---

[8] If an attorney is not retained by the parent, guardian, or custodian of the child, an attorney will be provided by the Maryland Office of the Public Defender. CJP § 3-8A-14.2(b)(1).

[9] Before the statute's enactment, if a child challenged the admissibility of a confession, the State was required to show by only a preponderance of the evidence that the statement was voluntary. *See, e.g.*, *Madrid v. State*, 474 Md. 273, 286, 310, 328 (2021).

### C.    *Implementation of the Statute and Post-Enactment Criticism*

To accommodate the new law, the Maryland Office of the Public Defender has set up a 365-day, "24/7 hotline that . . . answer[s] law enforcement any time they call" and has public defenders available to "talk to children immediately over the phone." *Briefing on the Juvenile Justice System Before the House Judiciary Comm.*, at 3:15:24-3:15:36 (Sept. 13, 2023) (statement of Jenny Egan, Chief of Juvenile Litigation for Baltimore City, Maryland Office of the Public Defender). From October 1, 2022, when the Child Interrogation Protection Act took effect, until August 2023, the hotline received about 300 calls. *Id.* 3:18:48-3:18:57. But, as of September 2023, the Office of the Public Defender reported that some police departments had not used the hotline at all. *Id.* 3:19:52-3:19:57. And the Office saw a "severe drop" in the number of calls since "rhetoric in the press attacking" the statute started "earlier in the summer" of 2023. *Id.* 3:19:58-3:20:06. While the Office once received an average of twenty to forty calls a month, calls dropped to less than twelve a month by August 2023. *Id.* 3:20:07-3:20:16.

Those criticizing the statute include several state's attorneys and law enforcement officials, who have raised many of the same concerns that arose before the law's passage. For example, Baltimore City State's Attorney Ivan Bates has said that fewer juvenile suspects are talking to police because public defenders are "shutting it down." Lee O. Sanderlin, *Baltimore Police Violating Child Interrogation Law as Prosecutors Seek to Repeal Protections*, Balt. Sun, Sept. 5, 2023. Likewise, Prince George's County State's Attorney Aisha Braveboy has said that the law has made "young people . . . less willing to provide critical information to solve crimes." *Id.*; *see also* Pamela Wood & Brenda Wintrode, *What We Learned from a State Hearing on Youth Crime*, Balt. Banner, Sept. 13, 2023 (quoting Acting Deputy Chief Zachary O'Lare of the Prince George's County Police Department as saying that interrogations of children have been "severely curtailed" because public defenders are advising minors not to talk to police).

But some prosecutors have also begun suggesting that the Child Interrogation Protection Act might be unconstitutional. They have raised two potential "avenue[s] of attack." *Briefing on the Juvenile Justice System Before the House Judiciary Comm.*, at 4:23:45-4:24:47 (Sept. 13, 2023) (statement of Rich Gibson, Howard County State's Attorney and President of the Maryland State's Attorneys' Association). First, they have suggested that the

statute might be unconstitutional because it requires a child to consult with an attorney before police may subject the child to custodial interrogation. According to Rich Gibson, the Howard County State's Attorney and President of the Maryland State's Attorneys' Association, "the issue is they're forced." *Id.* at 4:49:54-4:49:59. In particular, State's Attorney Gibson has said that:

> Most rights in laws and privileges are waivable. The person has an ability to say I choose to go forward or not. And, you know, *Gideon v. Wainwright*,[10] gives public defenders access if there's an indigency issue. You can afford your own attorney, you can have a public defender appointed to you, or you can do what's called—you can go pro se . . . which means you can go on your own. You can just choose to go forward representing yourself. And the way the [Child Interrogation Protection Act] is structured, it *requires* that that youth engage with a public defender. And that requirement could be deemed unconstitutional.

*Id.* at 4:14:43-4:15:21; *see also id.* at 4:09:05-4:09:18 (statement of Baltimore City Deputy State's Attorney Gregg Solomon-Lucas) ("It's not so much that children should not be allowed to have representation by an attorney, the question is whether or not they are able to waive that right that has been afforded to them."); Memorandum from Deputy Baltimore City State's Attorney Thomas M. Donnelly to Baltimore City State's Attorney Ivan J. Bates 1, 3 (Sept. 6, 2023) ("Donnelly Memo") (arguing that "[t]he right to the assistance of counsel carries with it the corresponding right to waive or reject counsel," and that the statute "has unconstitutionally taken the right to have counsel and made it an obligation," "strip[ping] juveniles of the *right* to elect or to waive counsel in a custodial setting"); *cf. Briefing on the Juvenile Justice*

---

[10] In *Gideon v. Wainwright*, the United States Supreme Court held that the right to counsel under the Sixth Amendment to the Constitution is a "fundamental right" and, thus, that indigent defendants are entitled, under Fourteenth Amendment due process, to appointed counsel in state criminal prosecutions. 372 U.S. 335, 338-40, 342-43 (1963); *see also* U.S. Const., Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); *id.*, Amend. XIV, § 1 (providing that no state "shall . . . deprive any person or life, liberty, or property, without due process of law").

*System Before the House Judiciary Comm.*, at 2:06:58-2:07:08 (Sept. 13, 2023) (statement of Zachary O'Lare, Acting Deputy Chief, Prince George's County Police Department) ("[E]ven when there are cases of juveniles who are willing to speak with investigators, they are unable to do so, as this law has removed their ability to decide to do so.").[11]

The second constitutional argument that prosecutors have raised concerns parents' rights. According to this argument, the Child Interrogation Protection Act might be unconstitutional because it does not permit parents to decide whether their children should consult with an attorney, speak to police, or both, and thus impermissibly forecloses "parents' rights in governing their child." *See Briefing on the Juvenile Justice System Before the House Judiciary Comm.*, at 4:24:30-4:24:46 (Sept. 13, 2023) (statement of Rich Gibson, Howard County State's Attorney and President of the Maryland State's Attorneys' Association); *see also id.* at 4:38:04-4:38:17 (statement of State's Attorney Gibson that "[t]here is a constitutional question about mandating that" a child "talk to a public defender as opposed to giving them the ability, an agency over themselves, *and their families, their parents*, to decide, you know, 'I wish to speak'" (emphasis added)); *cf.* at 2:07:18-2:07:29 (statement of Zachary O'Lare, Acting Deputy Chief, Prince George's County Police Department, that parents often "will want their child to speak and face consequences for their actions" but "[t]his law has taken away a parent's ability to make that decision"). *But see id.* at 4:54:52-4:54:58 (statement of State's Attorney Gibson) ("I don't find that argument particularly persuasive[.]").

As best as we can tell, no prosecutors raised either of these constitutional concerns before the statute was enacted.[12] In light of

---

[11] O'Lare testified on behalf of Maryland police chiefs and sheriffs. *Briefing on the Juvenile Justice System Before the House Judiciary Comm.*, at 2:00:32-2:00:39 (Sept. 13, 2023).

[12] Delegate Dan Cox raised a concern that the legislation "eviscerates the Fourteenth Amendment due process for parental rights" because, in his view, the law "mandat[es] that a parent may not discuss with their child the waiver process of their *Miranda* rights" and does not allow a child to speak to police "unless and until an attorney intervenes." *Voting Session on S.B. 53 Before the House Judiciary Comm.*, 2022 Leg., Reg. Sess., at 3:27-3:46, 4:47-5:13 (Mar. 29, 2022, Session No. 1) (statement of Del. Cox). But having reviewed the legislative history, we have found no other instances of anyone making that argument. Baltimore County State's Attorney Scott Shellenberger appeared to be the only prosecutor

these new arguments, you have asked for our opinion on the constitutionality of the Child Interrogation Protection Act.

## II
## Analysis

### A. *Whether the Statute Is Unconstitutional Because It Requires a Child to Consult with an Attorney Before Custodial Interrogation*

"[S]tatutes carry a strong presumption of constitutionality." *Koshko v. Haining*, 398 Md. 404, 426 (2007). Nonetheless, some prosecutors have suggested that the Act is unconstitutional because it requires that a child consult with an attorney before a police officer may conduct a custodial interrogation of the child. CJP § 3-8A-14.2(b). This requirement is unconstitutional, the argument goes, because a suspect not only has a constitutional right to the assistance of counsel before and during custodial interrogation but the right to proceed without the aid of an attorney. The statute is thus unconstitutional, the argument continues, because it denies children the right to choose to proceed without the assistance of counsel. *See, e.g.*, Donnelly Memo 1, 3.

As we explain below, we find this argument unpersuasive for several reasons. As a preliminary matter, we are not aware of any "right" to be subjected to custodial interrogation without the assistance of counsel. The United States Supreme Court has said that an individual has the right to the assistance of counsel before and during custodial interrogation to protect the individual's Fifth Amendment privilege against self-incrimination. And although the United States Supreme Court has recognized a right to self-representation as part of the *Sixth* Amendment right to counsel in a criminal trial, the Court has never suggested the same for the *Fifth* Amendment right to counsel that applies in custodial interrogations. Regardless, even if such a Fifth Amendment right to self-representation existed, the Act does not in fact prevent a child from answering police officers' questions without the

---

to raise a constitutional challenge, but only to that portion of the law that says that the Supreme Court of Maryland "may adopt rules concerning age-appropriate language to be used to advise a child who is taken into custody of the child's rights." CJP § 3-8A-14(e); *see also Hearing on S.B. 53 Before the Senate Judicial Proceedings Comm.*, 2022 Leg., Reg. Sess. (Jan. 27, 2022) (written testimony of Baltimore County State's Attorney Scott Shellenberger that "the bill is constitutionally flawed in that it allows for 'simpler' *Miranda* warnings").

presence or assistance of an attorney. We address each of these points in turn.

### 1. The Right to Counsel at Custodial Interrogation

The federal and Maryland constitutions provide more than one right to counsel. Two are most pertinent to the question before us: The rights to counsel under the Sixth Amendment and under the Fifth Amendment's privilege against self-incrimination. The Sixth Amendment to the United States Constitution[13] (and its Maryland analog, Article 21 of the Maryland Declaration of Rights) provide that a defendant has the right to the assistance of counsel for his defense "in all criminal prosecutions."[14] But this right attaches only "at or after the time that judicial proceedings have been initiated against" an individual "'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Brewer v. Williams*, 430 U.S. 387, 398 (1977) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972) (plurality); *see also Moran v. Burbine*, 475 U.S. 412, 429-30 (1986) (recognizing that "the Sixth Amendment right to counsel initially attaches" at "the first formal charging proceeding," i.e., "only when the government's role shifts from investigation to accusation").

The *Fifth* Amendment—and specifically, its privilege against self-incrimination—is the source of the right to counsel in custodial interrogation. *E.g.*, *Michigan v. Jackson*, 475 U.S. 625, 629 (1986), *overruled on other grounds, Montejo v. Louisiana*, 556 U.S. 778 (2009); *see also* 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.7(a) n.9 (4th ed., Dec. 2023 update) (recognizing that the right to counsel is "derivative" of the "right not to make a statement during custodial interrogation"). In *Miranda v. Arizona*, the United States Supreme Court "recognized that custodial interrogations, by their very nature, generate 'compelling pressures which work to undermine the individual's will to resist and to

---

[13] As noted above, *see note 10*, the Sixth Amendment applies to states through the Due Process Clause of the Fourteenth Amendment.

[14] *See* U.S. Const., Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); Md. Decl. Rights Art. 21 ("That in all criminal prosecutions, every man hath a right . . . to be allowed counsel . . . ."). A similar right to counsel also applies to juvenile delinquency proceedings, which are not criminal, but that right derives from the Due Process Clause of the Fourteenth Amendment. *See In re Gault*, 387 U.S. 1, 41 (1967); *see also* U.S. Const., Amend. XIV, § 1 (providing that no state "shall . . . deprive any person of life, liberty, or property, without due process of law").

compel him to speak where he would not otherwise do so freely.'" *Moran*, 475 U.S. at 420 (quoting *Miranda*, 384 U.S. at 467). Because "[t]he circumstances surrounding in-custody interrogation can operate very quickly to overbear [an individual's] will," the *Miranda* Court concluded that the right to consult with counsel before questioning, and to have counsel present at the interrogation, "is indispensable to the protection of the Fifth Amendment privilege." *Miranda*, 384 U.S. at 469-70. This is because the presence of counsel enables a suspect "to tell his story without fear, effectively, and in a way that eliminates the evils in the interrogation process," "insur[ing] that statements made in the government-established atmosphere are not the product of compulsion." *Id.* at 466. The right to counsel in custodial interrogation, then, is a "prophylactic right[]" rooted in "the Fifth Amendment guarantee that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.'" *McNeil v. Wisconsin*, 501 U.S. 171, 176 (1991) (alterations in original) (quoting U.S. Const., Amend. V).[15]

### 2. Protecting the Fifth Amendment Privilege Against Self-Incrimination

"[T]o provide practical reinforcement for the right against compulsory self-incrimination," the *Miranda* Court "suggested safeguards," *Michigan v. Tucker*, 417 U.S. 433, 443-44 (1974), namely, the so-called *Miranda* warnings discussed above, *see supra* Part I.A. Before questioning a suspect in custody, police must "fully apprise the suspect of the State's intention to use [the suspect's] statements to secure a conviction, and must inform [the suspect] of [their] rights to remain silent and to 'have counsel present . . . if [the suspect] so desires.'" *Moran*, 475 U.S. at 420 (quoting *Miranda*, 384 U.S. at 470). "Beyond this duty to inform, *Miranda* requires that the police respect the accused's decision to exercise the rights outlined in the warnings." *Id.* "If the individual indicates in any manner, at any time prior to or during questioning, that [they] wish[] to remain silent, the interrogation must cease."

---

[15] We acknowledge that, in *Escobedo v. Illinois*, 378 U.S. 478, 485-91 (1964), decided two years before *Miranda*, the Supreme Court indicated that the right to counsel in custodial interrogation was rooted in the *Sixth* Amendment. But although *Escobedo* "was originally decided as a Sixth Amendment case, 'the Court in retrospect perceived that the prime purpose of *Escobedo* was not to vindicate the constitutional right to counsel as such, but, like *Miranda*, to guarantee full effectuation of the privilege against self-incrimination[.]'" *Moran*, 475 U.S. at 429-30 (some internal quotation marks omitted) (quoting *Kirby*, 406 U.S. at 689 (plurality)).

*Miranda*, 384 U.S. at 473-74. Similarly, "[i]f the individual states that [they] want[] an attorney, the interrogation must cease until an attorney is present." *Id.* at 474.

Importantly, the Supreme Court "made clear that the warnings it required in *Miranda* are merely a threshold but not the only or even the best way to protect the rights of the accused." Kristin Henning & Rebba Omer, *Vulnerable and Valued: Protecting Youth from the Perils of Custodial Interrogation*, 52 Ariz. St. L.J. 883, 888-89 (2020) (citing *Miranda*, 384 U.S. at 467); *see also* Michael C. Dorf & Charles F. Sabel, *A Constitution of Democratic Experimentalism*, 98 Colum. L. Rev. 267, 403 (1998) (recognizing that "the Court's chosen standards" in *Miranda* "are understood to be mere minima"); Brandon L. Garrett, *Local Evidence in Constitutional Interpretation*, 104 Cornell L. Rev. 855, 894 (2019) (noting that the *Miranda* decision "can be seen as setting a constitutional floor above which jurisdictions are free to experiment").

Indeed, the *Miranda* Court acknowledged "potential alternatives" for protecting a suspect's Fifth Amendment rights and emphasized that the Constitution does not "necessarily require[] adherence to any particular solution for the inherent compulsions of the interrogation process." *Miranda*, 384 U.S. at 467; *see also id.* at 476 (explaining that the warnings are required only "in the absence of a fully effective equivalent"); *id.* at 479 (recognizing that "other fully effective means" may be adopted); *id.* at 490 (reiterating "that the Constitution does not require any specific code of procedures for protecting the privilege against self-incrimination during custodial interrogation" and "States are free to develop their own safeguards"). Thus, while the Fifth Amendment "requires procedures that will warn a suspect in custody of his right to remain silent and which will assure the suspect that the exercise of that right will be honored," *Dickerson v. United States*, 530 U.S. 428, 442 (2000) (citing *Miranda*, 384 U.S. at 467), it is "a matter of constitutional indifference what procedural safeguards a state adopt[s]" to accomplish these goals, Dorf & Sabel, *supra*, at 453. Rather than "creat[ing] a constitutional straitjacket," then, the Supreme Court has "encourage[d] . . . the States to continue their laudable search for increasingly effective ways of protecting the rights of the individual while promoting efficient enforcement of our criminal laws." *Miranda*, 384 U.S. at 467.

Nearly half the states have done just that, "offer[ing] some kind of increased protection" for juvenile suspects "above the

federal standard." Maxwell J. Fabiszewski, Note, *Major Reforms for Minors' Confessions: Rethinking Self-Incrimination Protections for Juveniles*, 61 B.C. L. Rev. 2643, 2683 (2020)[16]; *see also* Hana M. Sahdev, *Juvenile* Miranda *Waivers and Wrongful Convictions*, 20 U. Pa. J. Const. L. 1211, 1226 (2018) (recognizing that "states may go further than what is federally required" to protect a suspect's Fifth Amendment privilege against self-incrimination). By statute, state constitution, or common law, these states:

- require a child to be represented by counsel or, as in Maryland, consult with an attorney before custodial interrogation,[17]

---

[16] In addition to Maryland, we know of at least twenty-three states that have heightened protections for children who are subject to custodial interrogation and/or that restrict the government's use of a child's statement in subsequent court proceedings: Arkansas, California, Colorado, Connecticut, Hawaii, Illinois, Indiana, Iowa, Kansas, Massachusetts, Mississippi, Missouri, Montana, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Texas, Utah, Vermont, Washington, and West Virginia. *See infra* notes 17-24.

[17] *See* Cal. Welf. & Inst. Code § 625.6(a) (requiring, before custodial interrogation of a child 17 years or younger, that the child consult with legal counsel, and providing that the consultation "may not be waived"); Haw. Rev. Stat. Ann. § 571-31.8(a) (providing that, "[b]efore the waiver of any right against self-incrimination by and before a custodial interrogation of a child under eighteen years of age, the child shall have contact with legal counsel in person, by telephone, or by video conference," and providing further that such "contact may not be waived"); 705 Ill. Comp. Stat. Ann. § 405/5-170(a) (providing that a minor suspected of certain serious crimes, such as murder or sexual assault, "must be represented by counsel throughout the entire custodial interrogation" if the minor was under 15 at the time of the crime); Iowa Code Ann. § 232.11(1)(a) & (2) (providing that a child taken into custody for an alleged delinquent act that constitutes a serious or aggravated misdemeanor or a felony and is within the jurisdiction of the juvenile court has a right to be represented by counsel, which a child under 16 may not waive without the written consent of a parent, guardian, or custodian); Wash. Rev. Code Ann. § 13.40.740 (generally requiring police to "provide a juvenile with access to an attorney for consultation . . . before the juvenile waives any constitutional rights" and the police subject the juvenile to custodial interrogation); W. Va. Code Ann. § 49-4-701(l) (providing that an in-custody statement made by a child 13 or younger is not admissible unless "made in the presence of the juvenile's counsel," and a statement by a juvenile who is older than 13

- allow a child to have a parent or guardian present during custodial interrogation,[18]

- require the child to consult with an interested adult, such as a parent, guardian, or attorney, before custodial interrogation, or require the presence of a parent, guardian, or attorney during police questioning,[19]

- require a parent, guardian, or counsel to consent to the waiver of a child's constitutional rights related to custodial interrogation,[20]

- require a magistrate, rather than police, to advise a child of their rights related to custodial interrogation,[21]

- limit who can interrogate a child without a judge's authorization,[22]

- limit where and for how long police can interrogate a juvenile,[23] and/or

- otherwise restrict the government's use of a child's statement to police in a subsequent court proceeding against the child.[24]

---

but younger than 16 is not admissible unless "made in the presence of the juvenile's counsel or made in the presence of, and with the consent of, the juvenile's parent or custodian," provided that the parent or custodian has been "fully informed regarding" the juvenile's rights).

[18] *See* Ark. Code Ann. § 9-27-317(*i*)(2)(C) & (D); Mo. Ann. Stat. § 211.059.1(3); *Commonwealth v. Smith*, 471 Mass. 161, 165-67 (2015); N.C. Gen. Stat. Ann. § 7B-2101(a) & (a1); Utah Code Ann. § 80-6-206(2) & (3).

[19] *See* Colo. Rev. Stat. Ann. § 19-2.5-203(1); Conn. Gen. Stat. Ann. § 46b-137(a); Kan. Stat. Ann. § 38-2333(a); *Smith*, 471 Mass. at 165-67; *In re J.F.*, 286 N.J. Super. 89, 97-98 (App. Div. 1995); N.C. Gen. Stat. Ann. § 7B-2101(b); Okla. Stat. Ann. tit. 10A, § 2-2-301(A); *In re E.T.C.*, 141 Vt. 375, 379 (1982).

[20] *See* Ind. Code Ann. § 31-32-5-1; Mont. Code Ann. § 41-5-331.

[21] *See* Tex. Fam. Code Ann. § 51.095.

[22] *See* Miss. Code Ann. § 43-21-311(4).

[23] *See* N.Y. Fam. Ct. Act § 305.2(4)(b).

[24] *See* N.M. Stat. Ann. § 32A-2-14.

We are not aware of any appellate decisions or other authorities calling into question the constitutionality of any of these states' rules, including those that require a child to consult with an attorney before police may subject the child to custodial interrogation. That is not surprising because, in "establishing different standards" for juveniles, these states have applied "an accepted legal principle" that minors often "hold a . . . protected status in our legal system." *In re E.T.C.*, 141 Vt. 375, 378 (1982) (quoting *Lewis v. State*, 259 Ind. 431, 437 (1972)). Indeed, the United States Supreme Court has long "underscored the vulnerability of juveniles facing interrogation and criminal prosecution." Restatement of the Law – Children and the Law § 14.22 cmt. b (Am. Law Inst., Tentative Draft No. 1, 2018); *see also Haley v. Ohio*, 332 U.S. 596, 599 (1948) (plurality) (recognizing that "a mere child—an easy victim of the law"—"cannot be judged by the more exacting standards of maturity"); *Gallegos v. Colorado*, 370 U.S. 49, 54 (1962) (noting that, "no matter how sophisticated," a juvenile suspect "cannot be compared" to an adult); *Eddings v. Oklahoma*, 455 U.S. 104, 115-16 (1982) ("Our history is replete with laws and judicial recognition that minors, especially in their earlier years, generally are less mature and responsible than adults."); *Roper v. Simmons*, 543 U.S. 551, 569 (2005) (recognizing that "juveniles are more vulnerable or susceptible to . . . outside pressures"); *J.D.B.*, 564 U.S. at 272 (recognizing that "a reasonable child subjected to police questioning will sometimes feel pressured to submit when a reasonable adult would feel free to go").

Given the flexibility that *Miranda* grants states and the Supreme Court's recognition that "children characteristically lack the capacity to exercise mature judgment," *J.D.B.*, 564 U.S. at 273, we see no constitutional problem with the Child Interrogation Protection Act's requirement that, before police subject a child to custodial interrogation, the child consult with an attorney. After all, the Supreme Court itself has long recognized that a child "needs counsel and support" if they are "not to become the victim first of fear, then of panic" when questioned by police. *Haley*, 332 U.S. at 599-600 (plurality); *see also Gallegos*, 370 U.S. at 54 (recognizing that a child could benefit from the counsel of "[a] lawyer or an adult relative or friend" with "more mature judgment").

To be sure, the Supreme Court has said that "the actual presence of a lawyer" is not constitutionally *required* "to dispel the coercion inherent in custodial interrogation." *Moran*, 475 U.S. at 426 (noting that the *Miranda* Court declined to adopt this "more extreme position"). But, as already noted, the Court has also made

clear that "[n]othing . . . disables the States from adopting different requirements for the conduct of its employees and officials as a matter of state law." *Id.* at 428; *accord* Stephen J. Schulhofer, Miranda, Dickerson, *and the Puzzling Persistence of Fifth Amendment Exceptionalism*, 99 Mich. L. Rev. 941, 955 (2001) (characterizing the *Miranda* rules "as the constitutionally mandated floor" with "ample room for steps to supplement the *Miranda* system"). And the *Miranda* Court itself recognized that "[t]he presence of counsel . . . would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the [Fifth Amendment] privilege." *Miranda*, 384 U.S. at 466.

As we understand the argument raised by some prosecutors, however, the concern is not with providing children the opportunity to consult with an attorney before custodial interrogation but, rather, the fact that the statute *requires* a consultation. *See Briefing on the Juvenile Justice System Before the House Judiciary Comm.*, at 4:49:54-4:49:59 (Sept. 13, 2023) (statement of Rich Gibson, Howard County State's Attorney and President of the Maryland State's Attorneys' Association) ("The issue is they're forced."). It appears that these prosecutors believe that suspects have not only a constitutional right to the assistance of counsel during custodial interrogation but a constitutional right to "self-representation"— that is, the right to be questioned by police, while in custody, without the assistance of counsel. *See id.* at 4:14:43-4:15:21 (State's Attorney Gibson's statement that the law allows someone to retain an attorney, have one appointed, or "go on your own"); *see also* Donnelly Memo 1-2 (arguing that "[t]he right to the assistance of counsel carries with it the corresponding right to waive or reject counsel," and asserting that the Supreme Court has, "[i]n the Sixth Amendment context," "held that forcing counsel upon a defendant" violates the Constitution). This argument conflates two different rights to counsel and misapplies the United States Supreme Court's jurisprudence on self-representation at trial.

3.    *The Right to Self-Representation*

In *Faretta v. California*, the United States Supreme Court concluded that individuals have a constitutional right to represent themselves *at a criminal trial*. 422 U.S. 806, 818-19 (1975). This right is found not in the Fifth Amendment, which gives rise to the right to counsel at custodial interrogation but, rather, the Sixth Amendment, which provides:

> In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const., Amend. VI; *see Faretta*, 422 U.S. at 818.

The *Faretta* Court concluded that the very "structure of the Sixth Amendment" supports a right of self-representation, as the Amendment "does not provide merely that a defense shall be made for the accused" but "grants to the accused personally the right to make [their] defense." 422 U.S. at 818-19. The Court explained:

> It is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with the witnesses against him," and who must be accorded "compulsory process for obtaining witnesses in his favor." Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment.

*Id.* at 819 (footnote omitted). Relying also on early "English and colonial jurisprudence," *id.* at 818, the Court thus held that the Sixth Amendment guarantees an individual "the right to defend oneself *at trial*," *Martinez v. Court of Appeal*, 528 U.S. 152, 154 (2000) (emphasis added).

As already noted, however, the right to counsel at custodial interrogation derives from the *Fifth* Amendment's privilege against self-incrimination. *See, e.g.*, Kevin Corr, *Debunking the Myths: A Compendium of Law Enforcement Misconceptions*, 23 Am. J. Crim. L. 121, 168 n.190 (1995) (recognizing that "[t]he Sixth Amendment right to counsel and the Fifth Amendment right to counsel" that applies to custodial interrogation "are not one and the same"). Thus, a right to self-representation rooted in the history and text of the *Sixth* Amendment lends no support to the notion that

the *Fifth* Amendment right to counsel has a corresponding right to self-representation during custodial interrogation.[25]

The mere fact that one can waive the Fifth Amendment right to counsel does not mean that the individual has a corresponding *right* to submit to custodial interrogation without an attorney's assistance. After all, "[t]he ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right." *Singer v. United States*, 380 U.S. 24, 34-35 (1965); *see also id.* at 25-26 (rejecting the argument that the Sixth Amendment, which grants a criminal defendant the right to a trial by jury, provides a "correlative right to have [the] case decided by a judge alone"). Indeed, with respect to the Sixth Amendment right to counsel, the *Faretta* Court emphasized that the ability to waive that right did not "mechanically" establish a right to self-representation. 422 U.S. at 819 n.15. Rather, it was historical practice and the text of the Sixth Amendment itself in which the Court found a right to self-representation at trial. *Id.* at 818-20.

Although the Court has recognized a right of self-representation corresponding to the *Sixth* Amendment right to counsel, the Court has never suggested the same for the *Fifth* Amendment right to counsel that applies in custodial interrogations. And given the "difference between the Fifth Amendment and Sixth Amendment rights to counsel, and the policies behind these constitutional guarantees," *Patterson v. Illinois*, 487 U.S. 285, 297 (1988) (internal quotation marks omitted), we can find no support for the notion that suspects have a *Fifth* Amendment right to self-representation in custodial interrogations. *Cf. In re Darryl P.*, 211 Md. App. 112, 120-21 (2013) (recognizing the "vast difference between the influence on

---

[25] We acknowledge that, at the time of a custodial interrogation, the subject of police questioning may have been formally charged with a crime and, thus, entitled to the protections of the Sixth Amendment. *See, e.g.*, *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (recognizing that, "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings," including "[i]nterrogation by the State"). But that does not establish a right to self-representation at the interrogation. The Supreme Court has so far recognized only the "right to defend oneself at trial," *Martinez*, 528 U.S. at 154, and we are aware of no court identifying a Sixth Amendment right (or any other constitutional right) to self-representation at custodial interrogation. Moreover, because "the Sixth Amendment right is 'offense specific,'" questioning "unrelated to charged crimes" would not implicate the Sixth Amendment. *Kansas v. Ventris*, 556 U.S. 586, 592 (2009) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)).

confession law of the Sixth Amendment right to counsel, and the Fifth Amendment privilege against compelled self-incrimination," and cautioning against the "constitutional chaos" that can result when "a Sixth Amendment factor intrud[es] into a Fifth Amendment analysis"); William J. Stuntz, *Waiving Rights in Criminal Procedure*, 75 Va. L. Rev. 761, 827 (1989) (noting "the formal distinction between the right to counsel in the station house," which is "ancillary to the [Fifth Amendment] privilege against self-incrimination," and the right to counsel at judicial proceedings, which "derives directly from the sixth amendment").

> 4.    *The Act Allows a Child to Submit to Custodial Interrogation Without the Assistance of Counsel*

Regardless, even if a right to self-representation applied to custodial interrogation, nothing in the Act precludes a child from submitting to police questioning without the presence of an attorney.

With limited exception, the statute prohibits law enforcement from conducting a custodial interrogation of a child unless the child consults with an attorney *before* custodial interrogation. *See* CJP § 3-8A-14.2(b) (providing that "[a] law enforcement officer may not conduct a custodial interrogation of a child until . . . [t]he child has consulted with an attorney"). But the statute does not require the attorney to be present *during* custodial interrogation. After consulting with counsel, the child can still elect to waive their *Miranda* rights and speak to police, with or without the assistance of counsel. The Act simply seeks to ensure that a child does not waive those rights without first talking to an attorney. *See Voting Session on S.B. 53 Before the House Judiciary Comm.*, 2022 Leg., Reg. Sess., at 20:01-20:06 (Mar. 28, 2022, Session No. 1) (statement of Del. Bartlett); *cf.* Hillary B. Farber, *The Role of the Parent/Guardian in Juvenile Custodial Interrogations: Friend or Foe?*, 41 Am. Crim. L. Rev. 1277, 1304 (2004) (recognizing that the purpose of requiring a consultation with an attorney is "to insure an informed and rational choice by the juvenile" as to whether to waive constitutional rights); *see also* Michelle Jeffs & Sean Brian, *Parental Presence or Totality of Circumstances? An Assessment of Utah's Juvenile* Miranda *Law & 50 State Survey*, 24 N.Y.U. J. Legis. & Pub. Pol'y 565, 608 (2022) (asserting that *Miranda* "was intended to ensure that people understand their fundamental constitutional rights so that if and when they choose to talk to law enforcement, the choice is made knowingly and voluntarily").

To be sure, an attorney who speaks to a juvenile under § 3-8A-14.2 may well advise the child to invoke the right to silence. That, in fact, appears to be the reason some state's attorneys oppose the law. *See* Sanderlin, *supra* (quoting Prince George's County State's Attorney Braveboy as saying that "young people are less willing to provide critical information" to police under the law, and quoting Baltimore City State's Attorney Bates as saying that public defenders are "shutting it down"). But the Fifth Amendment privilege against self-incrimination "is a personal right, belonging solely to the person who is himself incriminated." *Park v. Cangen Corp.*, 416 Md. 505, 512 (2010). Thus, even if an "attorney has instructed the investigating officers not to talk to" his client, the client may waive his *Miranda* rights, "in spite of his attorney's advice to the contrary," and speak to police. *Marr v. State*, 134 Md. App. 152, 173 (2000). Section 3-8A-14.2 does not change that.[26]

That the Act imposes an additional step before a child can waive their *Miranda* rights does not violate the Constitution. "[I]t has long been accepted that the waiver of constitutional rights can be subjected to reasonable procedural regulations." *Singer*, 380 U.S. at 35. In fact, the United States Supreme Court itself has imposed an additional safeguard to ensure that a waiver of the *Miranda* right to counsel is voluntary, knowing, and intelligent: Although the Court has "held that after initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation," the Court has also held that "when an accused has invoked his right to have counsel present," a

---

[26] It is also worth noting that, even if a suspect has invoked the right to counsel under *Miranda*, the suspect may later waive that right. *See Edwards v. Arizona*, 451 U.S. 477, 484 (1981) (finding no such waiver but recognizing that a suspect who has invoked the right to the presence of counsel during interrogation may later waive it if the suspect "underst[ands] [the] right to counsel and intelligently and knowingly relinquishe[s] it," as evidenced by something more than merely "respond[ing] to further police-initiated custodial interrogation"). Indeed, even *appointing* counsel—rather than just requiring an individual to *consult* with counsel before deciding whether to invoke the right to assistance of counsel—does not prohibit that individual from later waiving the right to assistance of counsel. *See, e.g.*, *Fowlkes v. State*, 311 Md. 586, 604 (1988) (recognizing, in the context of the right to counsel at trial under the Sixth Amendment and Article 21, an indigent defendant, after being appointed counsel, may waive the right to assistance of counsel, if it is done knowingly, intelligently, and voluntarily); Md. Rule 4-215 (governing appointment and discharge of counsel and waiver of the right to assistance of counsel in criminal proceedings).

subsequent "waiver of that right cannot be established by showing only that he responds to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards v. Arizona*, 451 U.S. 477, 484 (1981). "[H]aving expressed his desire to deal with the police only through counsel," the accused "is not subject to further interrogation by the authorities until counsel has been made available to him." *Id.* at 484-85. Only then may he validly waive the right to counsel. *Id.* at 485. This is because "once a suspect indicates that 'he is not capable of undergoing [custodial] questioning without advice of counsel,' 'any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation,[27] is itself the product of the inherently compelling pressures and not the purely voluntary choice of the suspect.'" *Maryland v. Shatzer*, 559 U.S. 98, 104-05 (2010) (brackets in original) (some internal quotation marks omitted) (quoting *Arizona v. Roberson*, 486 U.S. 675, 681 (1988)). A similar safeguard—that is, requiring a child to consult with an attorney before invoking or waiving *Miranda* rights—is thus consistent with Supreme Court precedent.

Finally, we think it worth noting that, even where the Supreme Court has recognized a right to self-representation (at a criminal trial), the Court has also found that having an attorney present at trial to advise the defendant does not necessarily violate that right. Thus, when a defendant invokes their right to self-representation at trial, the court may, "over the defendant's objection," appoint standby counsel to assist the defendant with such tasks as "introducing evidence," "objecting to testimony," or complying "with basic rules of courtroom protocol and procedure." *McKaskle v. Wiggins*, 465 U.S. 168, 183-84 (1984). If such participation by counsel during trial does not infringe on one's right to self-representation at trial, it is hard to see how requiring a consultation with an attorney before custodial interrogation could infringe on any hypothetical right to self-representation at that interrogation—especially given that, after the consultation, the child can decide whether to invoke the rights of silence or counsel

---

[27] If "the accused himself initiates further communications, exchanges, or conversations with police," the *Miranda* protections do not apply, *Edwards*, 451 U.S. at 485, as the Fifth Amendment is concerned only with coerced confessions, not "[v]olunteered statements," *Miranda*, 384 U.S. at 478 (recognizing that "[t]here is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make" (footnote omitted)).

or agree to answer police officers' questions without the assistance of counsel.

### 5. *Summary*

We find no merit to the argument that the Child Interrogation Protection Act violates a constitutional right of children by requiring them to consult with an attorney before police may subject them to custodial interrogation. We are not aware of any "right" to submit to custodial interrogation without the assistance of counsel. Although the United States Supreme Court has recognized a right of self-representation corresponding to the *Sixth* Amendment right to counsel in a criminal trial, the Court has never suggested the same for the *Fifth* Amendment right to counsel that applies in custodial interrogations. Regardless, even if such a Fifth Amendment right of self-representation existed, the Act does not prevent a child from answering police officers' questions without the presence or assistance of an attorney. We thus conclude that the Act's attorney-consultation requirement does not infringe any constitutional rights of children.

## B. *Whether the Statute Impermissibly Infringes on Parental Rights*

We turn now to the second argument that has been raised for why the Child Interrogation Protection Act might be unconstitutional. As we understand it, this argument is that the statute impermissibly infringes on a parent's constitutional right to control their child by not permitting the parent to decide whether their children should consult with an attorney or speak to police. *Briefing on the Juvenile Justice System Before the House Judiciary Comm.*, at 4:24:30-4:24:46, 4:38:04-4:38:17 (Sept. 13, 2023) (statements of Rich Gibson, Howard County State's Attorney and President of the Maryland State's Attorneys' Association).; *cf.* at 2:07:18-2:07:29 (statement of Zachary O'Lare, Acting Deputy Chief, Prince George's County Police Department). We find no merit in this argument either.

To be sure, the United States Supreme Court has long recognized that the Fourteenth Amendment protects the "fundamental liberty interest[]" of "parents in the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65

(2000) (plurality).[28] Consistent with this constitutional right, parents enjoy broad decision-making powers about such matters as their children's education and religious upbringing[29] and who may spend time with their children.[30]

But "[c]onstitutional rights do not mature and come into being magically only when one attains the state-defined age of majority." *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 74 (1976). "Minors, as well as adults, are protected by the Constitution and possess constitutional rights," *id.*, and "[p]arental rights are far from absolute," 1 William J. Rich, *Modern Constitutional Law* § 15:3 (3rd ed., Nov. 2023 update); *see also Gonzalez v. Reno*, 212 F.3d 1338, 1352 n.20 (11th Cir. 2000) (recognizing that "parental authority over children . . . is not without limits in this country"); Francis Barry McCarthy, *The Confused Constitutional Status and Meaning of Parental Rights,* 22 Ga. L. Rev. 975, 977-78 (1988) (noting that "many forms of state regulation of the parent-child relationship"—such as compulsory school attendance, vaccination, and child labor—"are by now so common that they are no longer even questioned" despite "limit[ing] parental choices").

---

[28] The Fourteenth Amendment, which provides that no State shall "deprive any person of life, liberty, or property, without due process of law," U.S. Const., Amend. XIV, § 1, "includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests,'" *Troxel*, 530 U.S. at 65 (plurality) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).

[29] *See Meyer v. Nebraska*, 262 U.S. 390, 399-401 (1923) (holding that a state law banning the teaching of German in public schools was unconstitutional because it materially interfered with, among other things "the power of parents to control the education of their own"); *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35 (1925) (recognizing parents' constitutional right to provide private or religious education to their children rather than using public schools); *Wisconsin v. Yoder*, 406 U.S. 205, 219-34 (1972) (holding that a state impermissibly interfered with a combination of religious and parental interests when it tried to compel Amish parents to send their children to school after the eighth grade).

[30] *See Troxel*, 530 U.S. at 67, 72-73 (plurality); *id.* at 76-77 (Souter, J., concurring in the judgment); *id.* at 80 (Thomas, J., concurring in the judgment) (agreeing that a state statute that allowed any person to petition a court for visitation rights, and the court to grant those rights if in "the best interest of the child," unconstitutionally infringed on parents' fundamental liberty interest).

In situations involving a child's individual liberties—such as a minor's "substantial liberty interest in not being confined unnecessarily for medical treatment"[31] or the right to make decisions about the use of contraception—parents' rights often yield to the child's constitutional rights. *See Parham v. J.R.*, 442 U.S. 584, 604 (1979) (recognizing that "the child's rights and the nature of the commitment decision are such that parents cannot always have absolute and unreviewable discretion to decide whether to have a child institutionalized"); *Anspach ex rel. Anspach v. City of Philadelphia*, 503 F.3d 256, 269 (3d Cir. 2007) (finding no constitutional right to parental notification when a minor child seeks to obtain contraception); *Doe v. Irwin*, 615 F.2d 1162, 1167-69 (6th Cir. 1980) (same).[32]

Such is the case with custodial interrogations of juveniles. Although the United States Supreme Court has not specifically been presented with the question of whether parents have control over their children's invocation of constitutional protections during custodial interrogations, the Court, in defining how police and courts should treat children suspected or accused of committing crimes, has focused "largely on the due process rights to which juveniles are entitled and said very little about the . . . rights of their parents." Margareth Etienne, *Managing Parents: Navigating Parental Rights in Juvenile Cases*, 50 Conn. L. Rev. 61, 68 (2018).

For example, in *In re Gault*, 387 U.S. 1, 30-55 (1967), the Court held that juvenile delinquency proceedings—although not technically "criminal" in nature—must nonetheless provide many of the same due process protections, including adequate notice of

---

[31] *Parham v. J.R.*, 442 U.S. 584, 600 (1979).

[32] We acknowledge that, in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 231 (2022), the United States Supreme Court overruled *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), and held that the Constitution does not provide a right to abortion. But the *Dobbs* Court made clear that its decision does not upend its earlier rulings on an individual's constitutional right to access contraception. *See Dobbs*, 597 U.S. at 262, 295 (asserting that "rights regarding contraception" are "different from the right to abortion," and referencing the "unfounded fear" that the *Dobbs* decision "will imperil" the constitutional right to contraception); *see also Carey v. Population Servs. Int'l*, 431 U.S. 678, 693-94 (1977) (plurality) (recognizing that "the right to privacy in connection with decisions affecting procreation extends to minors as well as to adults," and concluding that "the constitutionality of a blanket prohibition of the distribution of contraceptives to minors is a fortiori foreclosed").

charges, the right to counsel, and the privilege against self-incrimination. The Court further concluded that the government had failed to satisfy these constitutional standards with respect to a 15-year-old boy who had been found delinquent for making a lewd phone call and committed to an industrial school, potentially for up to six years. *Id.* at 4-8.

But while the Court resolved the case on the ground that "children have procedural constitutional rights that parallel, in kind, if not degree, the rights of adults," the Court "could have achieved the same result" by holding that "the boys' parents' rights were violated by an adjudication process that rendered it impossible for them to adequately protect or make decisions for their child." Etienne, *supra*, at 67-68. Indeed, the case was "positioned to be the jurisprudential inheritor of . . . the development of substantive due process rights, particularly as applied to parents' authority over their children." *Id.* at 68. Authorities arrested the boy while his parents were at work and left no notice that he had been taken into custody. *In re Gault*, 387 U.S. at 5. When the government filed a petition of delinquency, on the same day as the hearing, no one served a copy on the parents. *Id.* At the hearing, the judge took the matter under advisement; the juvenile's mother learned of a subsequent hearing only from an officer's informal note. *Id.* at 6. Even though the parents asserted that these facts violated their own constitutional rights, *see id.* at 32-34, the Supreme Court "provided no robust analysis of what [a] parent's decision-making rights in the juvenile justice process ought to be," Etienne, *supra*, at 69. To be sure, the Court required "soft rights for parents, such as notice of charges and proceedings." *Id.*; *see also In re Gault*, 387 U.S. at 33-34. But the Court "treated the[se] parental rights as a collateral and secondary function of the accused juvenile's rights." Etienne, *supra*, at 66, 68.

Since then, the Supreme Court's juvenile interrogation cases have continued to focus on the principles established in *Miranda* and on protecting juvenile suspects' constitutional rights rather than those of their parents. In one case, for example, the Court held that a juvenile subject to custodial interrogation did not invoke his Fifth Amendment rights when he asked to see his probation officer rather than a lawyer. *Fare v. Michael C.*, 442 U.S. 707, 709, 727-28 (1979). In so holding, the Court reiterated the reasoning of *Miranda*, "the unique role the lawyer plays in the adversary system of criminal justice," and the need to consider the totality of the circumstances in determining whether a suspect has invoked or waived any *Miranda* rights. *Id.* at 717-25. The Court acknowledged that "the age and experience of a juvenile" could be

relevant factors indicating that "his request for his probation officer or his parents, is, in fact, an invocation of his right to remain silent." *Id.* at 725. But the Court did not otherwise address the parent-child relationship or consider whether parental rights play a role in the custodial interrogation of children. Similarly, in another case, the Court reaffirmed that juveniles enjoy *Miranda* rights and acknowledged that a child's age could play a role in determining whether the child is "in custody" and, thus, entitled to *Miranda*'s protections. *J.D.B.*, 564 U.S. at 269-72. But the Court made no mention of parents' rights with respect to the custodial interrogation of a child. Although these cases did not squarely present the question of whether a parent has the constitutional right to make decisions related to their child's custodial interrogation, the absence of any indication that parents have such a right is, at the very least, conspicuous.

That the Court has focused exclusively on the child's individual liberty interest is not surprising, given that "[o]ne's decision to waive the right to remain silent can be the watershed moment in cinching a conviction or exposing oneself to prosecution for more serious offenses." Farber, *supra*, at 1301. "It is the child who stands to lose his personal freedom . . . and it is he, not his parents, who possesses the right to remain silent." Martin Guggenheim, *The Right to Be Represented But Not Heard: Reflections on Legal Representation for Children*, 59 N.Y.U. L. Rev. 76, 89-90 (1984). In addition, "[p]arents and juveniles sometimes have conflicting interests," Jennifer Alberts, *Interrogation of Juveniles: Are Parents the Best Defenders of Juveniles' Right to Remain Silent?*, 19 New Crim. L. Rev. 109, 110 (2016), and the cases in which the Court has found violations of parents' rights, such as *Meyer*, *Pierce*, and *Yoder*, have "involve[d] no conflict between parent and child," Lee E. Teitelbaum & James W. Ellis, *The Liberty Interest of Children: Due Process Rights and Their Application*, 12 Fam. L.Q. 153, 170 (1978).

In any event, we are not aware of any authority "to support the proposition that the personal rights guaranteed by . . . the Fifth Amendment to the United States Constitution may be effectively invoked (or waived) by anyone other than the individual holding those rights, even if that individual is a juvenile." *State ex rel. Juvenile Dep't of Lincoln County v. Cook*, 138 Or. App. 401, 407 (1996) (rejecting an argument that a child's mother could invoke the child's right to counsel at interrogation), *aff'd on other grounds*, 325 Or. 1 (1997). Indeed, at least as a constitutional matter, it appears that "police can question children without parental presence or notification." Note, *Juvenile* Miranda *Waiver and*

*Parental Rights*, 126 Harv. L. Rev. 2359, 2372 (2013); *see also* Etienne, *supra*, at 82 (asserting that "[p]arents do not have a constitutional right to be present during the police interrogation of their children"); Farber, *supra*, at 1290 (recognizing that "parental/guardian presence is not mandated").[33] Thus, we find no merit to the argument that the Child Interrogation Protection Act violates a parent's constitutional right in the care, control, and custody of their child.

### III
### Conclusion

It is our opinion that the Child Interrogation Protection Act's attorney-consultation requirement does not violate any constitutional rights of children or their parents.

> Anthony G. Brown
> Attorney General of Maryland
>
> Rachel A. Simmonsen
> Assistant Attorney General

Patrick B. Hughes
Chief Counsel, Opinions and Advice

---

[33] The statute here nonetheless requires police to "ma[k]e an effort reasonably calculated to give actual notice to the parent . . . of the child that the child will be interrogated." CJP § 3-8A-14.2(b)(2).